UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA M. RIVAS, | Case No. C05-5435RBL |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| JOANNE B. BARNHART, Commissioner of Social Security, | Noted for March 10, 2006 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed by the parties. The undersigned now submits the following report, recommending that the Court affirm the administrative decision to deny plaintiff social security benefits.

**<u>INTRODUCTION</u>**

Born in 1970, Lisa Rivas was 33 years of age at the time of the administrative hearing on April 1, 2004. Ms. Rivas has a 7th grade education, leaving school when she became pregnant. She has no vocational training. Ms. Rivas is divorced and has seven children who do not reside with her.

October 31, 2001, Plaintiff filed an application for Supplemental Security Income Benefits. (TR 56). She alleges disability (the inability to work) since December 30, 2000, due to the following impairments and complaints: Depression; Personality disorder; Severe mood swings; Fatigue; Irritability;

Restlessness; Easily frustrated; Sleep disruption; Feelings of helplessness and uselessness; and Asthma. Plaintiff's application was denied initially and upon reconsideration. Ms. Rivas timely requested a hearing. On May 15, 2004, the administrative law judge ("ALJ") issued an opinion, finding Ms. Rivas able to perform her "past relevant work as a bakery clerk or cashier" (TR 27). Alternatively, the ALJ stated that "if the claimant were unable to perform her former employment, an unfavorable determination would also be warranted within the framework of the Medical-Vocational Guidelines of Appendix 2 of the regulations" (TR 27). Plaintiff requested review of the ALJ's decision by the Appeals Council, and by letter dated May 19, 2005, the Appeals Council declined to grant review.

Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision denying plaintiff's application for supplemental security income benefits.

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

**A. The ALJ Properly Weighed The Medical Evidence**

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ erroneously considered the medial evidence, particularly the severity of Ms. Cooper's mental impairments and the opinion of Dr. Melson, an evaluating psychiatrist.

The ALJ's opinion summarizes plaintiff's medical history and the opinions of record. The ALJ found that plaintiff did not have any severe physical impairments (Tr. 24), but mentally, he found that she suffered from depression, personality disorder, and a history of substance abuse now in remission (Tr. 27). The ALJ focused on the mental evaluations in the record, stating:

> The record does reveal a history of documented psychological symptomatology, although the claimant's demonstrated functional capacity with response to treatment does not directly correspond to the subjectively reported severity of her impairment.
>
> GAU evaluations from September 2000, March 2001, and September 2001 indicate that the claimant experienced depressive symptoms and exhibited traits consistent with a personality disorder. However, these symptoms were noted to be intertwined with polysubstance abuse, which was subsequently treated concomitantly with her anxiety and/or depression. As she is shown to have experienced significant functional improvement following cessation of substance abuse and medical treatment, I give no weight to the "checkbox" limitations contained in these early reports (Exhibits 4-6F). Treatment notes from Greater Lakes Mental Healthcare for the period of January 2001 to November 2001 indicated that the claimant's depression was also related to a host of psychosocial stressors including losing custody of children in September 1999 to Child Protective Services for a variety of child rearing transgressions. Initially, the claimant minimized her substance abuse (alcohol and cannabis). It was requested that, along with mediation management and counseling, the claimant participate in MICA treatment (Exhibit 11F).
>
> On February 2, 2002, the claimant was seen by Steve Melson, M.D. for psychiatric evaluation. Primary diagnoses were generally consistent with previous examinations, dysthymic mood disorder with anxiety versus major depressive disorder, recurrent episode; polysubstance dependence, primarily alcohol and cannabis; and probable borderline personality disorder. Significantly, Dr. Melson noted that the claimant's extensive behavioral and emotional problems were treatable, but that she was not in very active treatment (Exhibit 13F).
>
> Updated progress notes from Greater Lakes Mental Healthcare for the period December 2001 through may 2003 confirm that the claimant's overall psychological functioning is greatly improved by both consistent treatment and abstinence from abuse substances. While her psychotropic medications were changed and tailored for maximum response over time, the claimant responded almost immediately with a responsive affect, improved mood, minimal to no psychotic features, better anger control, less impulsivity, and less focus on

> her personal situations including the custody of her children. Grooming and hygiene were adequate, and the claimant presented in casual clothing with good eye contact. As recently as April 2003, the claimant stated that she was doing well with no depression, anxiety, or suicidal ideation. She felt that the prescribed Paxil regimen seemed to actually be working better over time. Periods of increased anxiety or depression are not shown to occur on a more than intermittent basis (Exhibit 20F).
>
> [Omitted]
>
> The claimant has asserted that her medical condition is of such severity as to preclude the performance of all work activity, stating in the context of her disability reports and questionnaires, and at the oral hearing, that she cannot function in a work environment due to ongoing anxiety, depression, and low stress tolerance. However, that assertion is not borne out by the objective evidence of record, well-weighted medical opinions, or by the consistency of the claimant's own reported and demonstrated functional ability. Despite claims of incapacity which would not allow the claimant to perform work activity, a review of the entire record (mainly from Greater Lakes Mental Healthcare) indicates that when she shows up and takes her medications as prescribed, she is pretty stable and not particularly depressed. Naturally, when she fails to show or forgets to take her medication, there is recurrent depression and/or manifestations of her underlying personality disorder. This does not form a valid basis for disability as, 20 CFR § 416.930 provides that an individual will be found "not disabled" if that individual fails to follow prescribed treatment without good reason.
>
> Even with this circumstance, there is no evidence of anhedonia or marked loss of social functioning, and at most the claimant has decompensated only once or twice. She is cognitively intact, reads the paper, and gets out and about as needed. Such activities, while not directly in correlation with work duties, do indicate a capacity to engage in activities consistent with assessed abilities. Only Dr. Melson opined marked limitations in social and/or cognitive functioning, but his report was not based on longitudinal observation but on a single cursory examination in the context of benefit eligibility. His report is given little weight in deference to the actual treatment notes of record. Finally, I note that the claimant was not overly credible in her presentation at hearing. She seemed relaxed and calm, and smiled and laughed appropriately. In general, she was able to keep up with the hearing proceedings quite well. Outwardly, she was in no distress, and there was no indication fo severe physical or emotional dysfunction. The treatment notes give every indication that she will remain quite functional with treatment compliance.

Tr. 24-26.

The ALJ placed great weight on the opinions of doctors at the Disability Determination Services (DDS), who evaluated the issues at the initial and reconsideration levels for the administration (Tr. 24), and as noted in his discussion above, the treatment records from Greater Lakes Mental Healthcare.

The opinions of the DDS evaluations and the treatment records relied on by the ALJ directly conflict with the opinion and exam evaluation of Dr. Melson. Choosing not to adopt the opinion of Dr. Melson, the ALJ limited plaintiff to simple work tasks requiring no extended concentration (Tr. 27). After carefully reviewing the record and the ALJ's opinion, the court finds ALJ's reasonably interpreted the medical evidence, and thus, the court should affirm the administrative decision.

**B. The ALJ Properly Assessed Plaintiff's Ability to Perform Past Relevant Work**

The Ninth Circuit relatively recently wrote:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted]
>
> This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).

As discussed above the ALJ in this matter focused on Ms. Rivas' mental impairments when he reviewed her medical record and concluded that he mental impairments limited her to performing "simple work tasks not requiring extended concentration. (Tr. 26). The ALJ continued to conclude that, "Given her mental residual functional capacity, I find that the claimant could perform her past relevant work as a bakery clerk or cashier. As described in her work report, these jobs required no technical knowledge or skills and no completion of written reports or forms (Exhibit 4E)" (Tr. 26).

In the work report referenced by the ALJ, Ms. Rivas described her jobs of a bakery clerk and cashier as not requiring any technical knowledge or skills (Tr. 80, 82). Describing her job in the bakery, plaintiff stated she "picked out bakery items customers wanted and placed [them] in [a] bag. [She] kept trays full of pies, cookies, etc...." (Tr. 80). At the hearing the ALJ questioned Plaintiff about her bakery job at Frisbee's and her job working as a cashier at a casino (Tr. 541-543). The court finds no error in the ALJ's assessment of plaintiff's past relevant work and her ability to perform that work as it was described to him in the written materials and at the hearing.

## CONCLUSION

The ALJ's decision is supported by substantial evidence in the record. Therefore, the Court should AFFIRM the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal

1 Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written
2 objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for
3 purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule
4 72(b), the clerk is directed to set the matter for consideration on **March 10, 2006**, as noted in the caption.

DATED this 17th day of February, 2006.

          */s/ J. Kelley Arnold*
          J. Kelley Arnold
          U.S. Magistrate Judge